UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MILTON GERARD ESQUIBEL, CITIZENS OF IDAHO (U1777), | |
| Plaintiffs, | Case No. 1:11-cv-00606-BLW |
| v. | MEMORANDUM DECISION AND ORDER |
| STATE OF IDAHO, CASSIA COUNTY, FIFTH JUDICIAL DISTRICT, SUPREME COURT OF THE STATE OF IDAHO, CASSIA COUNTY PROSECUTOR'S OFFICE, CASSIA COUNTY SHERIFF'S DEPARTMENT, ADA COUNTY SHERIFF'S DEPARTMENT, ADA COUNTY PROSECUTOR'S OFFICE, | |
| Defendants. | |

**INTRODUCTION**

Before the Court are Plaintiffs' Motion to Strike (Dkt. 21) and Motion for Sanctions (Dkt. 22). Also before the Court are Defendants' Motions to Dismiss (Dkt. 23, 24, and 27). The Court has determined that oral argument would not significantly assist the determination of the issue, and will therefore decide the motions without a hearing. Being familiar with the record and for the reasons expressed below, the Court will grant

Defendants' Motion to Dismiss (Dkt. 23, 24, and 27), deny as moot Plaintiffs' Motion to Strike (Dkt. 21), and deny Plaintiffs' Motion for Sanctions (Dkt. 22).

## BACKGROUND

Milton Gerard Esquibel comes to this Court for troubles that began years ago with the divorce of Esquibel's mother, Gladys Esquibel, from Esquibel's father, Augustin Esquibel. *First Am. Compl.*, Dkt 20-21. Around the time the divorce was filed, in early 2008, Esquibel became worried about how Gladys was acting, and met with his father to discuss his concerns. *Id.* ¶¶ 17-18. Esquibel was convinced that Gladys was mis-medicating his father, stealing from him, and attempting to acquire Esquibel's inheritance. *Id.* ¶¶ 11-13, 19-23.

Over the next few months Esquibel became progressively more volatile in voicing his concerns about his mother's conduct: reporting his concerns to the police, *id.* ¶¶ 30-32; sending letters to the state attorney general and governor, *id.* ¶ 33; and sending "proof" to local and state newspapers and TV stations, *id.* ¶ 34. Esquibel's efforts later became confrontational when he sought out Attorney General Wasden at the Association of Counties Conference and questioned him about "what to do when corrupt officials such as the sheriff and prosecutor would not prosecute." *Id.* ¶¶ 59, 61-63. Following the disturbance, Esquibel was asked to leave. *Id.* ¶¶ 62-63.

Esquibel's actions took another dramatic turn in August 2009 while he was attending a hearing for his parents' divorce case. *See id.* ¶¶ 93, 95. Esquibel wanted to present Judge Hodges with certain evidence, which in Esquibel's mind was conclusive

evidence of the fraud Gladys was perpetrating on his father. *Id.* ¶¶ 93-94. However, because Esquibel was not a party to the case—and presumably because the evidence was not pertinent to the proceedings—Judge Hodges declined to entertain such evidence. *See id.* ¶¶ 96. Precisely what happened next is unclear from the complaint; however, it is known that Esquibel was ultimately escorted from the courthouse and criminal charges were filed against him because of his conduct. *Id.* ¶¶ 99-108.

Esquibel objected to the ensuing criminal trial. *See id.* ¶¶ 105-201. Esquibel contends that the criminal complaint and supporting affidavit were perjured, *id.* ¶¶ 107-08, that he was never properly brought before the court, *id.* ¶¶ 110-117, 125-29, 137-39, that the court therefore lacked jurisdiction, *id.* ¶¶ 135-36, 142-143, and that the ensuing litigation was fundamentally flawed, *id.* ¶¶ 138-202. Paramount among the perceived flaws was Esquibel's inability to bring his chosen defense. *Id.* ¶¶ 147, 202. Although Esquibel sought to justify his conduct by providing evidence of the alleged fraud, *id.* ¶¶ 120-121, the judge "continued pettifogging with denials," calling "such defense frivolous." *Id.* ¶¶ 147, 202. Esquibel claims these flaws "constitute[d] fraud …perpetrated upon the court." *Id.* ¶ 109.

At the conclusion of the allegedly flawed trial, a jury found Esquibel guilty. *Id.* ¶ 390. A decision Esquibel appealed. *Id.* ¶¶ 203-219. When Esquibel's appeal was dismissed, he concluded that "all Justices of the SUPREME COURT OF THE STATE OF IDAHO failed in their supervisory" role. *Id.* ¶ 219.

The final stage of Esquibel's tale begins with his arrest by Ada County some months later. *See id.* ¶ 220. Esquibel first alleges that the underlying warrants—one from Ada County and one from Cassia County—were invalid, but he fails to describe the errors in detail. *Id.* ¶¶ 215-22. The warrants' problems, while nebulous, were allegedly enough to makes the associated arrest and imprisonment invalid. *Id.*

During the arrest and the ensuing imprisonment, Esquibel allegedly suffered a great amount of physical pain and suffering, because various actions aggravated his prior back injuries. *See id*. ¶¶ 222-24. First at his arrest, when his "back was twisted and compressed while being placed in the back seat" of the car, and later when he was "forced to sit on hard concrete," Esquibel claims the officers knowingly aggravated his preexisting injuries. *Id.* ¶¶ 224, 254.

Esquibel continues that, despite his complaints regarding his medical condition and his daily requests for a physical examination, he was not provided adequate facilities—i.e. a disability toilet, rails for the toilet and shower, and an extra mattress for comfort. *Id.* ¶¶ 263, 273, 276, and 300. While complaining that he was not provided adequate facilities, Esquibel admits that one deputy did give him an extra mattress for his back, and another explained how to file a medical request. *Id.* ¶¶ 266-270. In addition, Esquibel states that he filed a medical request on October 19, 2011, and an appointment was set. *Id.* ¶ 271. He attended the appointment on October 25, 2011, and was prescribed ice and anti-inflammatories three times a day. *Id.* ¶ 310.

Esquiel complains, however, that "on numerous occasions [he] was not given ice as prescribed." *Id.* ¶ 311. On one occasion, according to Esquibel, he asked for ice; but instead of getting ice, he was taken to a small holding cell in a wheelchair, his wheelchair was tipped by a deputy, and he was made to sit on the concrete floor causing additional pain. After waiting in the holding cell for two hours, he was taken back to his cell "*with ice*," and told not to cause any further problems. *Id.* ¶¶ 365-73. Esquibel was also given a walking cane "days later." *Id.* ¶ 380. Esquibel continued to request medical treatment from the deputies, but they all told him to "put in a medical request." *Id.* ¶ 381.

Esquibel now comes before this Court as a *pro se* plaintiff, alleging that multiple state and private actors have either failed in their legal duties or actively sought to deny Esquibel's constitutional rights – including his right to due process of law. *Id.* ¶ 149-212, 393-452. Esquibel named numerous state and local entities for their ties to the alleged wrongdoing, and went through a list of individuals who are allegedly individually responsible. *Id.* ¶¶ 417, 420. Among those allegedly responsible are Prosecutor Al Barrus, Attorney General Wasden, Sheriff Randy Kidd, Judge Hodges, and Judge Robinson, to name a few. Although "[e]ach of the said Defendant are being sued in the personal-capacity (individual-capacity),"*id.* ¶ 417, none was provided service of process or captioned as a defendant.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint

attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual

allegations," it must set forth "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

"state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556.

The plausibility standard is not akin to a "probability requirement," but it asks for more

than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint

pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the

line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

In a more recent case, the Supreme Court identified two "working principles" that

underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet

that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions. *Id*. "Rule 8 marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at

1950. Second, only a complaint that states a plausible claim for relief survives a motion

to dismiss. *Id*. "Determining whether a complaint states a plausible claim for relief will .

. . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009)(issued 2 months after *Iqbal*).[1]  The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to

---

[1] The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. . .."  Given *Twombly* and *Iqbal*'s rejection of the liberal pleading standards adopted by *Conley,* it is uncertain whether the language in *Harris v. Amgen* has much of a life expectancy.

support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 (9th Cir. 2004)**.** The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## ANALYSIS

### 1.      Review of State Court Action & the Rooker-Feldman Doctrine

The Court starts its analysis by noting that in order to adequately consider Esquibel's claims it must first consider limitations on its authority to scrutinize state court actions.  A federal district court has no jurisdiction "over challenges to state-court decisions, in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). "This rule applies even though . . . the challenge is anchored to alleged deprivations of federally protected due process and equal protection rights." *Id.* at 486 (internal citation omitted).  Instead, under 28 U.S.C. § 1257, "the proper court in which to

obtain such review is the United States Supreme Court." *Worldwide Church of God v. McNair,* 805 F.2d 888, 890 (9th Cir. 1986). This rule of law is known as the "*Rooker-Feldman* doctrine."

The *Rooker-Feldman* doctrine "bars federal courts from exercising subject matter jurisdiction over a proceeding in which a party losing in state court seeks what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Doe v. Mann*, 415 F.3d 1038, 1041 (9th Cir. 2005) (internal quotation marks omitted). The doctrine bars not only issues heard in the state court action, but "any issue raised in the suit that is inextricably intertwined with an issue resolved by the state court in its judicial decision." *Id.* at 1042 (internal quotation marks omitted).

This bar on federal judicial review is a fundamental flaw with many of Esquibel claims – because these claims are inseparably intertwined with various state court actions.

The first time Esquibel was involved with an Idaho state court was at his father's divorce proceedings (CV-2008-82-DR). Esquibel felt it was his civil and filial duty to correct any wrongdoing by his mother in those proceedings. He did so by first alerting local officials in Cassia County and later by interrupting judicial proceedings at the courthouse. That court, however, did not view Esquibel's actions favorably. Rather, Esquibel was escorted from the court, and ultimately charged with four criminal charges, including contempt and threatening a public officer.   Although Esquibel may feel that

the court did not adequately address his pleas, his proper avenue of redress was within the Idaho state judicial system. If that system in turn failed him, then the proper avenue of redress is the United States Supreme Court. This Court is not endowed with the power to hear Esquibel's complaints regarding state court proceedings.

Even if this Court were able to review these claims, which it is not, Section 1983 does not provide a cause of action for failure to prosecute. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *see also Rennick v. City of Cincinnati*, 2007 WL 2248818 (S.D. Ohio 2007). Thus, any claims relating to the civil divorce proceedings are beyond the scope of this Court's jurisdiction because of *Rooker-Feldman*. Accordingly, Esquibel's claims regarding the state court divorce proceedings must fail.

Many of Esquibel's other claims must also fail because they derive from the state court criminal proceedings against him (CR-2009-6661), which followed the previously mentioned outburst. For example Esquibel's claim for malicious prosecution is barred. In the most basic sense, malicious prosecution is a review of whether an action was brought and maintained for malicious purposes. This Court cannot entertain Esquibel's claim without reviewing his subsequent criminal conviction; a review prohibited by *Rooker-Feldman*. *See e.g. Heck v. Humphrey*, 512 U.S. 477, 484 (2006) ("to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit").

Other claims that also must fail include claims of perjury, violation of Idaho state law by its officials, failure of oath, failure to supervise, and any potential tort arising from him being escorted from the court. *See id* ¶ 153-185, 209, 219, 399, 403, and 404. Esquibel acknowledges that he raised these concerns with the state court. *Id.* But because these issues were decided unfavorably, he asks this Court to review the decisions and award him damages. *See id.* Regardless of the fact that Esquibel chooses to now characterize this review as a suit for damages, these issues are undeniably intertwined with the prior state court proceedings. Review of any these matters by this Court would directly contravene *Rooker-Feldman.*

This brings the Court to Esquibel's alleged wrongful arrest and wrongful imprisonment. While the complaint gives a loquacious description of the ensuing confinement, it provides little explanation as to why the warrant was issued. *Id.* ¶ 220. As far as the Court can discern, Esquibel's arrest and subsequent confinement in May 2011 were the result of the Esquibel's allegedly flawed criminal trial. As such, review of the basis of the arrest and imprisonment would be a de facto review of that trial, which is impermissible. Even if a cognizable Fourth Amendment violation had occurred, the proper avenue to address his concerns was in the state court and this Court cannot take up the issue of whether a state court correctly addressed such violation.

Thus, any and all claims of misconduct at either the civil or criminal trial, and any claims stemming from any of the state courts' decisions must be dismissed; these include: malicious prosecution, false imprisonment, false arrest, loss of personal property (in so

much as the property lost was related to any fine imposed by the courts), and any alleged tort by officers while escorting Esquibel from the courthouse.

This appears to eliminate all claims relating to a number of defendants: the Supreme Court of Idaho, the Fifth Judicial District, the Ada County Prosecutor's Office, Cassia County, the Cassia County Prosecutor's Office, and Cassia County Sheriff's Department. But assuming arguendo that some portion of Esquibel's claims remains, the Court will discuss immunity.

**2.      Dismissal of Claims against State Entities and County Defendants**

### A.      *Sovereign Immunity: the Eleventh Amendment*

In general, the Eleventh Amendment prohibits litigants from bringing suit against states, state agencies, and state officials acting in their official capacity in federal court. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). The "Eleventh Amendment's jurisdictional bar applies 'regardless of the nature of the relief sought.'" *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Accordingly, "the Eleventh Amendment immunity that [state entities] may claim as dependent instrumentalities of [the state] shields them from claims for both monetary and non-monetary relief." *Rounds v. Oregon State Bd. of Higher Education*, 166 F.3d 1032, 1036 (9th Cir. 1999).

There are three exceptions to Eleventh Amendment immunity. First, the Eleventh Amendment does not bar suit against a government official for prospective injunctive relief only. *Ex parte Young*, 209 U.S. 123 (1908). Second, the Eleventh Amendment

does not bar suit when a statute allows suits to be brought against states in federal court.

Third, the Eleventh Amendment does not bar suit when the state unequivocally consents

to be sued in federal court.

While Esquibel filed his action under § 1983, this statue does not waive sovereign

immunity. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Nor does

Idaho Tort Claims Act ("ITCA") provide such a waiver. Although ITCA does provide a

general waiver, more than a general waiver is of sovereign immunity is required. *See*

*Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985); *see also Richardson v.*

*Idaho Dept of Health and Welfare*, 2:10-cv-00648-BLW (D.Idaho Feb. 10, 2012). Thus,

in Esquibel's case, the Eleventh Amendment bars his claims against the State of Idaho.

### B.    *Monell and the Counties*

Moving beyond the State of Idaho, the Court considers whether the claims against

Ada County and Cassia County entities can survive. This analysis begins with the

principle that a local governmental entity may not be sued except where the inflicted

injury stems from a government's policy or custom.  *Monell v. Dept. of Soc. Serv. of New*

*York*, 436 U.S. 658, 694 (1978).  That is, "a [county] can be found liable under § 1983

only where the [county] itself causes the constitutional violation at issue." *City of Canton*

*v. Harris*, 489 U.S. 378, 385 (1989). There is no respondeat superior liability under §

1983. *Id.* Requisite elements of a § 1983 claim against a county are the following: (1) the

plaintiff was deprived of a constitutional right; (2) the county had a policy; (3) the policy

amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy

was the moving force behind the constitutional violation. *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996) (internal quotation marks omitted)).

Esquibel has not alleged any specific policies or customs in his complaint, or that such policies or customs caused the constitutional violations of which he complains. Further, the Court can envision no set of facts under which Cassia County or Cassia County Sheriff's Department had adopted a policy of physically throwing people out of court; therefore, rather than grant leave to amend, both should be dismissed as a parties.

Additionally, Esquibel has failed to allege facts supporting any claim that Ada County Sheriff Department had a policy that had the effect of depriving him of his constitutional right. Although the Court would normally allow leave to amend, in this case such leave is moot because, as will be discussed below, Esquibel has failed to state a viable claim upon which relief can be granted.

**3.     Individual Defendants**

Although the Court has now dealt with claims against many of the state entities, Esquibel claims that various actors are individually liable for their actions.  Esquibel, however, does not list those defendants in the caption, and he did not serve the individual defendants.  Rule 10(a), Fed.R.Civ.P. specifies that the caption in a complaint *shall* include the names of *all parties*.  More importantly, "[a] federal court does not have jurisdiction over a defendant unless the defendant has been served properly under

Fed.R.Civ.P. 4." *Direct Mail Specialists v. Eclat Computerized Techs., Inc.,* 840 F.2d 685, 688 (9th Cir. 1988). Here, there is no evidence that Esquibel even attempted to serve the individual defendants. If proper service under Rule 4(d)(4) is not accomplished within 120 days after the complaint is filed and the plaintiff cannot show good cause why such service was not made, the action must be dismissed. *See* Fed.R.Civ.P. 4(m); *Hart v. United States,* 817 F.2d 78, 80–81 (9th Cir.1987). Because service has not been effectuated against any of the individual defendants listed in the Amended Complaint, the Court lacks jurisdiction over those defendants.

But even if the individuals were served or the action re-filed, Esquibel's claims could not survive because of judicial immunity and the statute of limitations.

**A.** *Judicial and Prosecutorial Immunities*

Under the doctrine of absolute judicial immunity, a judge is not liable for monetary damages for acts performed in the exercise of his judicial functions. *Stump v. Sparkman*, 435 U.S. 349 (1978). To determine whether an act is judicial in nature so that immunity would apply, a court looks to "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

Once it is determined that a judge was acting in his judicial capacity, absolute immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072,

1075 (9th Cir. 1986) (internal citations omitted). For example, judicial immunity is not lost "by allegations that a judge conspired with one party to rule against another party: 'a conspiracy between judge and [a party] to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges. . . .'" *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996) (quoting *Ashelman v. Pope*, 793 F.2d at 1078). Absolute immunity for judicial officers "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988).

It is also well settled that a prosecutor is also entitled to absolute prosecutorial immunity from liability for damages under 42 U.S.C. § 1983 when the alleged wrongful acts were committed by the prosecutor in the performance of an integral part of the criminal judicial process. *Robichaud v. Ronan*, 351 F.2d 533, 536 (9th Cir. 1965); *Imbler v. Pachtman*, 424 U.S. 409 (1976).

Here there is no question that many of those involved were acting as part of state court judicial proceedings. Because Esquibel has raised no grounds for exempting any of the judicial officers or prosecutors from judicial immunity, the Court must dismiss all claims against individuals within the Supreme Court of Idaho, the Fifth Judicial District, the Cassia County Prosecutor's Office, and the Ada County Prosecutor's Office.

B.    ***Time Bar on Certain Claims***

In addition to naming individual judicial defendants, Esquibel names the members of the Cassia County Sherriff's Department as individual defendants. Those defendants

have not been properly served either, and therefore the Court does not have jurisdiction

over those defendants. Assuming, however, that the Court did have jurisdiction over

these defendants, the claims would be barred both by the *Rooker- Feldman*, which was

already discussed above, and by the statute of limitations. For claims under § 1983, the

statute of limitations is the same as the personal injury statute of limitation for the state in

which the claim brought. *Wilson v. Garcia*, 471 U.S. 261 (1985). For Idaho this limit is

two years. I.C. § 5-219(4). Because the only recounted interaction with Cassia County

Sheriff's was in September of 2009, any potential claims against those officers, as

individual, must be dismissed.

**4.     Remaining Claims: Defamation and Medical Indifference**

After the previously mentioned claims and defendants are removed from the case,

Esquibel is left with two causes of action—defamation and medical indifference.

### *A.*     **Defamation**

Throughout his judicial travails, Esquibel often found his name in the news. He

now seeks redress for reputational harm the state caused. But Esquibel has committed a

small but crucial error; he has not named a defendant that made any slanderous statement.

While Esquibel repeatedly alleges defamation by various newspapers, he never claims

that any of the statements were made by any named defendant. *Id.* ¶ 119, 148, and 213-

14.

Esquibel claim also has another flaw: defamation-type allegations alone do not

support a civil rights claim. *See Williams v. Gorton*, 529 F.2d 668 (9th Cir. 1976). A

Section 1983 claim can only be based upon defamation if a plaintiff alleges injury to his reputation from the defamatory statement, accompanied by an allegation of injury to a recognizable property or liberty interest. *Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir.1991). So even if slander had occurred, without an associated constitutional deprivation, Esquibel's claim must fail. As the Ninth Circuit has noted, "[t]here is no civil rights action for slander." *Hollister v. Tuttle*, 210 F.3d 1033, 1036 (9th Cir. 2000) (citation omitted).

Ultimately, for these reasons, Esquibel's claim of defamation must be dismissed.

### B. Medical Indifference

This brings the Court to Esquibel's final claim: medical indifference amounting to cruel and unusual punishment. *See Compl.* ¶¶ 231-244. "Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees," courts apply the same standard in both cases. *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010). And both require a "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

To prevail on an Eighth Amendment claim based on deficient medical care, a plaintiff must satisfy a two-part test. "First, the plaintiff must show a 'serious medical need.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle*, 429 U.S. at 104). A serious medical need is defined by what happens if a particular condition is *not* treated. If failure to treat a medical condition "could result in further significant injury or

the 'unnecessary and wanton infliction of pain'" then the prisoner has demonstrated a "serious medical need." *Id.*

Second, the plaintiff must show that defendants were deliberately indifferent to a serious medical need. To show such indifference, the plaintiff must show (1) the prison officials' subjective awareness of the medical need; (2) "a purposeful act or failure to respond to a prisoner's pain or possible medical need . . . ."; and (3) "harm caused by the indifference." *Id.*

"Deliberate indifference is a high legal standard." *Toguchi v. Chung,* 391 F.3d 1051, 1060 (9th Cir.2004). It is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corrections,* 220 F.Supp.2d 1098, 1105 (N.D.Cal. 2002); *see also Broughton v. Cutter Labs.,* 622 F.2d 458, 460 (9th Cir. 1980). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm 'rs,* 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle,* 429 U.S. at 105.

In addition, for a medical indifference claim against an entity, there is a third basic requirement to show medical indifference: a policy of deliberate indifference. In

order to succeed on his claims against a state entity, such as Ada County Sheriff's Department, Esquibel must meet the test articulated in *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). As was described above, this requires that the violation was the result of a policy or custom.

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" policy. *Monell*, 436 U.S. at 691. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Esquibel must also demonstrate either that each Defendant personally participated in the decisions regarding Esquibel's medical care, or that, as a supervisor, he or she directed, or knew of and failed to prevent, the actions causing Plaintiff's damages or injuries because there is no respondeat superior liability under § 1983. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)*. Vague and conclusory allegations of official participation in civil rights violations are not sufficient. *See Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 129 S. Ct. at 1949 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

Based on the current state of the law, Esquibel has failed to allege facts sufficient to meet the standard for stating a claim of deliberate indifference. On one hand prison

official may act with deliberate indifference "when they intentionally interfere with treatment once prescribed." *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999). But on the other hand, such a claim can be undermined by a record showing that the plaintiff "received numerous medical examination, follow-up appointments, further testing, and various courses of treatment for his complaints of back pain." *Brownlee v. Stocker*, 259 Fed. Appx. 12 (9th Cir. 2007).

Here, Esquibel was provided medical treatment for his discomfort. The complaint illustrates not indifference to his medical needs, but a mere requirement that Esquibel comply with the orderly procedures of the correctional facility—filing a medical request. Given the description provided, it is clear that Esquibel, while uncomfortable at times, was not subjected to wanton pain that would support a claim of cruel and unusual punishment.

## 4. Esquibel's Motion for Sanctions and Motion to Strike

Finally, the Court must address Esquibel's motions, both his motion to strike (Dkt. 21) and his motion for sanctions (Dkt. 22). First the Motion to Strike is moot because after the problematic answer was filed, Esquibel amended his complaint. Therefore the Court need not consider that motion.

Second, Esquibel's motion for sanctions is unfounded. Rule 11 provides an avenue for sanctions against a party when their filings are for an improper purpose or frivolous. *Zaldivar v. City of Los Angeles*, 780 F.2d 823,830 (9th Cir. 1986); *Buster v. Greisen,* 104 F.3d 1186, 1190 (9th Cir. 1997). It does not, however, provide for sanctions when a

movant subjectively feels that the filing is frivolous. *Id.* Rather, it is an objective standard of whether a reasonable attorney would deem such paper unmeritorious. *Id.*

Here, Esquibel seeks again a review of the state court proceedings, this time guised as a motion for sanctions. As this Court stated above, such a review is barred by *Rooker Feldman*. Additionally, were such review allowed, the parties actions were reasonable. Thus, the motion is properly denied.

## ORDER

**IT IS ORDERED:**

1. State of Idaho, Supreme Court of the State of Idaho, and County Fifth Judicial District's Motion to Dismiss (Dkt. 27) is **GRANTED**.

2. Ada County's Motion to Dismiss (Dkt.24) is **GRANTED**.

3. Cassia County's Motion to Dismiss (Dkt. 23) is **GRANTED**.

4. Plaintiff's Motion for Sanctions (Dkt. 22) is **DENIED**.

5. Plaintiff's Motion to Strike (Dkt. 21) is **DENIED** as moot.

DATED: April 23, 2012

B. Lynn Winmill
Chief Judge
United States District Court